### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

In re Application of

FOURWORLD EVENT OPPORTUNITIES, LP,

Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in a Foreign Proceeding.

Case No. 22-mc-_____

### MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
### <u>APPLICATION FOR AN EX PARTE ORDER PURSUANT TO 28 U.S.C. § 1782</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .......................................................................................................2

      I.      History of the Ahlstrom-Munksjö enterprise. ..........................................2

      II.     Consortium members effectuate a squeeze-out of the Company's minority shareholders. ...........................................................................................3

      III.    The Consortium seeks to increase its shareholders through an exchange offer presented by the Ahlstrom family. ..........................................................4

      IV.    The Tender Offer period is extended while the Consortium consolidates its holdings to guarantee its success. ..........................................................5

      V.     The Offeror commences the A-M Redemption Arbitration. .................................6

      VI.    The Award in the A-M Redemption Arbitration adopts many of FourWorld's arguments in support of a higher share price due to "special reasons." .................8

      VII.   The parties file appeals from the Award to be heard by the Helsinki District Court. ..................................................................10

ARGUMENT ..........................................................................................................11

      I.      This Section 1782 application meets the statutory requirements..........................11

             A.      Respondent is found in this district. ..........................................11

             B.      The discovery sought is intended for use in a foreign proceeding. ...........12

             C.      Petitioner is an interested person in the foreign proceeding. ....................13

      II.    The discretionary *Intel* factors favor granting Petitioner's Application. ..............13

             A.      The discovery is sought from a non-party to the A-M Redemption District Court Proceeding. ..............................15

             B.      Respondent has no reason to believe that Finnish courts are unreceptive to Section 1782 discovery. ....................................15

             C.      Petitioner is not circumventing foreign restrictions.................................17

i

    D.  The subpoena is narrowly tailored............................................................18

  III.  *Ex parte* relief is appropriate.................................................................22

CONCLUSION.............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Attorney Gen. of Virgin Is. v. Hyman*,
    2020 WL 2615519 (D.D.C. May 23, 2020) ............................................................ 17, 20

*Attorney Gen. of Virgin Is. v. Hyman*,
    2020 WL 706504 (D.D.C. Feb. 23, 2021) .................................................................... 20

*Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of*
    *Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015)........................................................................................ 13

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995)........................................................................................ 20

*Haraeus Kulzer GmbH v. Esschem, Inc.*,
    390 F. App'x 88 (3d Cir. 2010) ............................................................................. 12, 14

*HT S.R.L. v. Velasco*,
    125 F. Supp. 3d 211 (D.D.C. 2015) ................................................................. 16, 17, 18

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
    2020 WL 820327 (N.D. Cal. Feb. 19, 2020) .............................................................. 21

*In re an Order Pursuant to 28 U.S.C. §1782 to*
    *Conduct Discovery for Use in a Foreign Proceeding*,
    2017 WL 3708028 (D.D.C. Aug. 18, 2017) .......................................................... 14, 20

*In re Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v.*
    *JAS Forwarding (USA), Inc.*,
    747 F.3d 1262 (11th Cir. 2014) .................................................................................. 22

*In re Application of Leret*,
    51 F. Supp. 3d 66 (D.D.C. 2014) .......................................................................... 11, 14

*In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to*
    *Conduct Discovery for Use in a Foreign Proceeding*,
    315 F. Supp. 3d 269, 273 (D.D.C 2018) .......................................................... 11, 22, 23

*In re Application of Republic of Ecuador v. Douglas*,
    153 F. Supp. 3d 484 (D. Mass. 2015) ........................................................................ 12

*In re Application of Thai-Lao Lignite (Thailand) Co.*,
    821 F. Supp. 2d 289 (D.D.C. 2011) ..................................................................... 11, 13, 14

*In re Barnwell Enterprises Ltd.*,
  265 F. Supp. 3d 1 (D.D.C. 2017) ................................................................ *passim*

*In re Caratube Int'l Oil Co. LLP*,
  730 F. Supp. 2d 101 (D.D.C. 2010) ...................................................................... 16

*In re Chodiev*,
  2021 WL 6805646 (D.D.C. May 14, 2021) ................................................... 12, 14, 19

*In re de Leon*,
  2020 WL 1047742 (D.D.C. Mar. 4, 2020) .............................................. 11, 18, 19, 21

*In re del Valle Ruiz*,
  939 F.3d 520 (2d Cir. 2019) ........................................................................... 11, 21

*In re DiGiulian*,
  2020 WL 5253849 (D.D.C. Sept. 2, 2020) ................................................... 15, 16, 18

*In re Eurasian Nat'l Resources Corp.*,
  2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ...................................................... 23

*In re Ex Parte Glob. Energy Horizons Corp.*,
  647 F. App'x 83, 85–86 (3d Cir. 2016) .............................................................. 21

*In re Hornbeam Corp.*,
  2018 WL 416486 (2d Cir. Jan. 16, 2018) ........................................................... 23

*In re in re Lucille Holdings PTE. Ltd. under 28 U.S.C. § 1782*,
  2022 WL 1421816 (D.D.C. May 5, 2022) ............................................................ 13

*In re Mota*,
  2020 WL 95493 (D. Del. Jan. 8, 2020) ............................................................... 22

*In re Schlich*,
  893 F.3d 40 (1st Cir. 2018) ............................................................................. 12

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ...................................................................... 12

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ................................................................. 16, 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................ *passim*

*Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*,
  2019 WL 1559433 (D.D.C. Apr. 10, 2019) ...................................................... 16, 20

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) ............................................... 22

*Matter of De Leon*,
    2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) ............................ 21

*Menashe v. Covington & Burling LLP*,
    552 F.Supp.3d 35 (D.D.C. 2021) .............................................. 19

*Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*,
    2016 WL 6304438 (D.N.J. October 26, 2016) ............................ 20

*Sergeeva v. Tripleton Int'l Ltd.*,
    834 F.3d 1194 (11th Cir. 2016) ................................................ 21

**Other Authorities**

28 U.S.C. § 1782 ...................................................................... *passim*

## PRELIMINARY STATEMENT

Petitioner FourWorld Event Opportunities, LP ("Petitioner" or "FourWorld") respectfully petitions this Court for an *ex parte* order, under 28 U.S.C. § 1782, authorizing discovery from Valerie Anne Mars ("Respond ent") for use in a proceeding pending before the District Court of Helsinki in Finland (the "A-M Redemption District Court Proceeding"). In that proceeding, minority shareholders (including Petitioner) are participating in an appeal—during which new evidence can be introduced—from an award issued by an arbitral tribunal (required under Finnish law) regarding the "fair price" of their shares in a multi-billion dollar, publicly traded company whose shares were redeemed and delisted through a tender offer (also referred to as a "squeeze out"). Respondent was a member of the company's board of directors during the relevant time period.

The arbitral tribunal found that the process leading to the tender offer was unfair such that "special reasons" (as defined under relevant Finnish law) justified increasing the redemption price offered under the tender offer's terms. These special reasons included: (i) the fact that a contemporaneous exchange offer provided favorable terms to the founders of the company and others, which were not offered to all shareholders and which chilled competing bidders; and (ii) a last-minute expansion of the agenda for the company's meeting of shareholders put pressure on them to approve the tender offer instead. And in the days after the requisite number of shareholders approved of the tender offer, the company released unexpectedly positive financial results.

Ultimately, in April 2022, the arbitral tribunal determined that the fair price of the company's shares was EUR 21.55, instead of the EUR 17.84 per share price provided for in the tender offer. This finding was flawed for a number of reasons, and through the A-M Redemption District Court Proceeding, Petitioner asks the Helsinki District Court to rule that EUR 24.49 is the appropriate fair price. In order to provide the judges that will decide the A-M Redemption District

Court Proceeding with all relevant evidence, Petitioner seeks this Court's relief for an order pursuant to Section 1782 to obtain certain discovery from Respondent.

Section 1782 permits this Court to authorize an "interested person" (such as Petitioner) in a foreign proceeding (such as the A-M Redemption District Court Proceeding) to serve discovery on a person found in this District (such as Respondent) and obtain testimony from her. Once those statutory requirements are satisfied, as they are here, this Court can consider the discretionary factors set forth by the Supreme Court in *Intel* to determine if the application is otherwise impermissible. None of those discretionary factors support denial of Petitioner's application. As a former member of the company's board, Respondent has material evidence regarding the tender offer that is relevant to Petitioner's continued pursuit of the fair value of the shares it held in the company. Accordingly, this Court should grant the application and authorize Petitioner to serve the proposed subpoena. Exhibit 1 to the Declaration of Kyle J. Kolb sworn to August 29, 2022 ("Kolb Decl.").

## BACKGROUND

### I.     History of the Ahlstrom-Munksjö enterprise.

Ahlstrom-Munksjö Oyj (the "Company" or "Ahlstrom-Munksjö") is a public limited liability company incorporated under the laws of Finland, whose shares were traded on Nasdaq Helsinki Ltd and Nasdaq Stockholm AB. Declaration of Risto Ojantakanen ("Ojantakanen Decl."), Ex. 1 ("Tender Offer Document") at 1. The Company was founded in the 1800s by the Alhstrom family and grew into a global leader of manufacturing fiber-based materials for use throughout industries and consumer-driven products. *See id.* at 1, 23. Its 2019 revenue across its portfolio companies was approximately EUR 5 billion, and it employed approximately 15,500 people worldwide. *Id.* at 1.

The Ahlstrom industrial family maintained its ownership interests in the Company primarily through Ahlstrom-Invest B.V. ("AIBV," which is referred to as "Ahlstrom Capital" in the Tender Offer Document). AIBV was an indirectly owned subsidiary of Ahlstrom Capital Oy, which is an investment fund owned by the Ahlstrom family. *Id.* Through these vehicles, the Ahlstrom family maintained an approximate 36% ownership interest in the Company prior to the transaction at issue.

## II. Consortium members effectuate a squeeze-out of the Company's minority shareholders.

On September 24, 2020, the Company announced that it had entered into a combination agreement with Spa Holdings 3 Oy (n/k/a Ahlstrom-Munksjö Holding 3 Oy) (the "Offeror") pursuant to which the Offeror had made a voluntary public cash tender offer to acquire all of the issued and outstanding shares in the Company not held by the Company or its subsidiaries (the "Tender Offer"), at a price of EUR 18.10 per share. Tender Offer Document at 2, 6, 14; Kolb Decl. Ex. 2.

The Offeror was a company created within the Bain Capital structure. Specifically, it is indirectly-wholly owned by Spa Lux Topco S.à r.l., which is wholly-owned by Spa (BC) Lux Holdco S.à r.l., which itself is owned and controlled by funds managed or advised by Bain Capital Private Equity (Europe), LLP (collectively "Bain Capital"). Kolb Decl. Ex. 2. Bain Capital is "one of the most successful and active private equity firms in the world" with experience in investments in the Nordic region. Tender Offer Document at 1.

The takeover bid was made by a consortium (the "Consortium") of Ahlstrom-Munksjö's major shareholders and Bain Capital (through those affiliates), which was not previously a shareholder. The pre-existing Company shareholders in the Consortium were AIBV, Viknum AB ("Viknum"), and Belgrano Inversiones Oy ("Belgrano"). *Id.* at 14. AIBV, as noted previously, was

the primary vehicle through which the members of the Ahlstrom family held and maintained their ownership interests in the Company. Together, AIBV, Viknum, and Belgrano held approximately 31.42% of the shares and votes in the Company as of the start of the Tender Offer period. *Id.* at 2. An additional 4.16% of the shares and votes in the Company were held by pension funds that had irrevocably agreed to accept the Tender Offer. *Id.*

Through the Tender Offer, the Consortium would retain ownership interests in the to-be-private Company (unlike all other shareholders), and would have full control of the Company. As a result of the Tender Offer, Bain Capital would become the majority shareholder with 55% of the shares, AIBV would hold 36% of the shares, and Viknum would 9% of the shares. *Id.* at 1.

On October 21, 2020, the Offeror published a tender offer document, a copy of which is annexed to the Ojantakanen Declaration as **Exhibit 1**.[1] The Tender Offer period began on October 22, 2020. Tender Offer Document at 14.

## III.    The Consortium seeks to increase its shareholders through an exchange offer presented by the Ahlstrom family.

On November 4, 2020, AIBV also offered, in parallel to the Tender Offer, an exchange offer to the shareholders of AIBV's parent company, Ahlstrom Capital Oy, pursuant to which such shareholders could exchange their shares in the Company for shares in AIBV. Ojantakanen Decl. Ex. 3 (Unofficial Office Translation, Statement by Minority Shareholders in the Arbitration Proceedings Concerning the Redemption of Minority Shares in Ahlstrom-Munksjö Plc, Case No. L03/2021 (Mar. 6, 2021) ("Statement of Defence")) § 4.3.1(iv); *see* Ojantakanen Decl. Ex. 2 (EU Growth Prospectus of Ahlstrom Invest B.V. dated as of Nov. 4, 2011). Approximately 96% of Ahlstrom Capital Oy's shareholders accepted the exchange offer. Ojantakanen Decl. Ex. 5 (partial

---

[1] Additional supplemental Tender Offer documents were released by the Company on October 28, 2020, December 11, 2021, and December 18, 2020, but only the December 18, 2020 supplement is included with these submissions.

translation of *In re Redemption of Minority Shares in Ahlstrom-Munksjö Oyj (2480661-5) Under Ch. 18 of the Companies Act*, Case No. L03/202, Confidentiality Decision (Cent. Chamber Com. Redemption Comm., Helsinki Feb. 25, 2022) ("<u>Award</u>")) at 201. This exchange offer was not offered to all the Company's shareholders, but only to those shareholders who also were shareholders of Ahlstrom Capital Oy (*i.e.*, members of the Ahlstrom industrial family). Statement of Defence § 4.3.1(v).

## IV.    The Tender Offer period is extended while the Consortium consolidates its holdings to guarantee its success.

Pursuant to the terms of the Tender Offer, more than 90% of the Company's shares needed to approve the Tender Offer. Ojantakanen Decl. ¶ 13; Tender Offer Document, Annex C at C-3. This so-called 90% condition is a standard condition for closing in Finnish public tender offers because when it is met, the offeror is entitled to de-list the company and to commence squeeze out proceedings to redeem the remaining shares at the "fair price." Tender Offer Document at 15. The terms of the Ahlstrom Tender Offer did not include any material protections for minority shareholders, including a "majority of the minority" provision. *See id.* at 10-11.

At the end of the Tender Offer period on January 14, 2021, the Consortium held 68.18% of all the Company's issued and 68.57% of all the Company's outstanding shares. Ojantakanen Decl. ¶ 15. Despite this, the Tender Offer had not yet been accepted by the requisite 90% of the Company's shareholders, with only 81.0% of the Company's shares being tendered. *Id.*; *see* Kolb Decl. Ex. 4.

Accordingly, the Company announced on January 20, 2021 that the offer period for the Tender Offer would be extended to February 4, 2021. Kolb Decl. Ex. 4; Statement of Defence § 4.3.1(x).

On January 25, 2021, the Company published an invitation to an Extraordinary General Meeting of shareholders to be held on February 19, 2021. Award at 187; Statement of Defence § 4.3.1(xii). The Company announced that the agenda for that meeting would include tentative proposals to: (i) authorize the Company's board of directors to issue up to 100% in additional shares of, up from 10%, which would double the number of the Company's outstanding shares if exercised, Ojantakanen Decl. ¶ 17, and (ii) change the Company's domicile to another country, Award at 187; Statement of Defence § 4.3.1(xii). These agenda items raised a specter that the shareholders would be diluted and inserted uncertainty into the future of the Company.

At the end of the extended Tender Offer period on February 4, 2021, approximately 9.6% additional shares had been tendered, leaving the Offeror owning approximately 90.6% of the Company's shares. Award at 187; Statement of Defence § 4.3.1(xiii).

On February 9, 2021, the Company announced the final results of the Tender Offer, pursuant to which approximately 90.6% of the Company's shares and voting rights were validly tendered and accepted. Kolb Decl. Ex. 5.

On February 10, 2021, one day after the Tender Offer period had expired, the Company published its Financial Statements Release, which reflected a significant increase in EBITDA results. Ojantakanen Decl. ¶ 20; Statement of Defence § 4.8.15(i); *see also* Award at 216 (referencing the Q1/2021 Interim Report from the Company). The Company's shareholders voted without the benefit of knowledge of this improving financial performance.

## V.    The Offeror commences the A-M Redemption Arbitration.

Under Finnish law, following a statutory "squeeze-out" of their shares (often described as a "take private" merger in other jurisdictions), the Company's shareholders are entitled to have the fair price of their shares determined following the transaction. Ojantakanen Decl. ¶ 13. The right

to the squeeze-out and the fair price is determined in a statutory arbitration proceeding that is required under Chapter 18 of the Finnish Companies Act (the "<u>Companies Act</u>"). *Id.* ¶ 21.

According to Chapter 18, Section 7 (3) of the Companies Act, if an offeror has by means of a tender offer acquired more than 90% of the shares and votes subject to such tender offer, the tender offer price is presumed to be the "fair price" unless there are "special reasons" to deviate from the tender offer price. *Id.*; Statement of Defence §§ 4.1.4, 4.4.4. If such special reasons are found to exist, the squeeze out price is determined in the squeeze-out arbitration. Ojantakanen Decl. ¶ 21; Statement of Defence § 4.4.4.

The main legal issues in the A-M Redemption Arbitration related to the interpretation and application of Chapter 18, Section 7 of the Companies Act. Ojantakanen Decl. ¶ 22. The issues to be decided by the tribunal were (i) whether the Offeror has acquired more than nine-tenths of the Company's shares; and (ii) whether any "special reasons" exist to justify deviating from the assumption that the deal price was fair to shareholders. *Id.*; *see* Statement of Defence § 4.4.4.

On February 11, 2021, the Offeror notified the Company that it intended to exercise its right of redemption and to initiate an arbitration proceeding pursuant to Chapter 18, Section 3 of the Companies Act. Ojantakanen Decl. ¶ 24. FourWorld had acquired shares in the Company in February 2020, and, through it and its affiliated funds and accounts, held a total of 5,377,769 shares of the Company, which corresponded to approximately 4.68% of the Company's issued and outstanding shares and voting power. *Id.* ¶ 11, 24.

On February 17, 2021, the Offeror commenced the A-M Redemption Arbitration. Award at 220; *see* Statement of Defence § 1.1.1. From the beginning, FourWorld was an active respondent in the proceeding, consistent with its role as an active minority shareholder in the Company. Ojantakanen Decl. ¶ 24; *see* Award at 4.

7

On April 23, 2021, as required, the Redemption Board of the Finland Chamber of Commerce appointed the arbitral tribunal charged with overseeing and deciding the A-M Redemption Arbitration. Award at 6; *see* Statement of Defence § 1.1.1.

In the A-M Redemption Arbitration, FourWorld retained two experts (Professor Vesa Puttonen and Juha Karttunen, the managing director of Sisu Partners Oy) regarding the valuation of the fair price for the shares of the Company and argued that the shares should be valued at EUR 24.49. Award at 182-85; Ojantakanen Decl. ¶ 31; Statement of Defence § 1.3.1.

On June 3, 2021, FourWorld submitted its Statement of Defence setting forth its positions on the fair price of the Company's shares.[2] Among other things, FourWorld requested that the Offeror produce certain documents. However, the arbitral tribunal did not order all of the requested documents be produced. Ojantakanen Decl. ¶ 34. And in fact, although the arbitral tribunal can "deem it necessary that a party produce a document," the tribunal, as well as the Helsinki District Court, has no power to require a third party not subject to jurisdiction in Finland to produce such documents. *Id.* ¶¶ 52-53.

## VI. The Award in the A-M Redemption Arbitration adopts many of FourWorld's arguments in support of a higher share price due to "special reasons."

On February 25, 2022, the arbitral tribunal rendered its decision, a copy of which is annexed as **Exhibit 3** (the "Award"), and an excerpted translated version of which is annexed as **Exhibit 4**, to the Ojantakanen Declaration. The tribunal decided that the redemption price payable by the Company for the 10,755,918 shares that were subject to the mandatory redemption shall be EUR 21.55 per share, an increase of EUR 3.71 per share. Award at 220, 229, 231-32.

---

[2] The Appendices to the Statement of Defence are not included with Exhibit 3 to the Ojantakanen Declaration.

As described more fully in the Award, the arbitral tribunal found that the market price of the Company's shares prior to the commencement of the A-M Redemption Arbitration did not arise in a free and independent exchange of shares and should not be relied upon. *Id.* at 206. Due to "special reasons," the redemption price provided for in the Tender Offer should be deviated from. *Id.* These "special reasons" included the exchange offer, which was directed at only a subset of the Company's shareholders, as well as the Extraordinary General Meeting scheduled to be held immediately after the Tender Offer Period. *Id.* at 201, 204 ("In view of the above, the Arbitration Court considers it clear that the execution of the Exchange Offer alongside the Tender Offer and the resulting division of the Offered Shareholders into two different groups, especially in terms of expectations and tax consequences for the Target Company's future performance and returns, constitute a special reason within the provision."), 206 ("[T]he Arbitral Tribunal finds that a number of parallel factors have been raised and substantiated in the case, which are justified to be considered as special reasons within the meaning of [Companies Act] 18:7.3 for disregarding the price presumption described in that provision.").

Further, the arbitral tribunal found that it was "clear" to "market participants, as well as to those who [may] have considered a possible competing bid, that the conditions for executing an exchange offer have been met, [and] that there are no conditions for a competing bid." *Id.*at 212. This meant that the "absence of competing takeover bids cannot . . . be considered as an indication that the market price under the Tender Offer would indicate the fair price of the share . . . ." *Id.*

In addition, the arbitral tribunal determined that the fair market price should be determined as of the commencement of the A-M Redemption Arbitration, instead of the date of the Tender Offer period's expiration, and could further incorporate information not available at that time. *Id.*at 209 ("The Arbitral Tribunal is therefore not bound in its discretion of deliberation to material that

has existed on 19 March 2021 or material that has been in the public domain and known to the market at that time."), 218.

## VII.    The parties file appeals from the Award to be heard by the Helsinki District Court.

On April 29, 2022, the Offeror filed an appeal from the Award with the District Court of Helsinki, pursuant to Chapter 18, Section 10 of the Companies Act, requesting that the court determine that the redemption price of the minority shares is the deal price of EUR 17.84 per share. Ojantakanen Decl. ¶ 38.[3] FourWorld also filed an appeal from the Award on April 29, 2022, pursuant to which it seeks to increase the redemption price to EUR 24.49 per share.

In this appeal to the District Court (*i.e.*, the A-M Redemption District Court Proceedings), additional evidence can be obtained and considered. *Id.* ¶ 44. In addition to live witness testimony, new documentary evidence or new deposition testimony will be eligible for admission and consideration. *Id.*

On June 20, 2022, the District Court of Helsinki held a preliminary hearing regarding the schedule for the appeal from the Award in the A-M Redemption Arbitration. Among other things, the following timetable was set: (i) by September 30, 2022, the Offeror and FourWorld shall submit their respective replies to each other's appeals; (ii) by November 3, 2022, the District Court shall decide on the parties requests for additional documents; (iii) a first official preparatory meeting shall be held on February 16, 2023 to discuss the status of the case and possible open issues in relation to the main proceeding; (iv) a second official preparatory meeting shall be held on March 15, 2023, which shall also serve as the "cut-off" date to introduce any new evidence for

---

[3] Due to dividends issued by the Company during the Tender Offer period, the offer price had fallen to EUR 17.84. *See* Kolb Decl. Ex. 3 (discussing first dividend of EUR 0.13); Kolb Decl. Ex. 6 (discussing second dividend).

use in the A-M Appeal Proceeding;[4] (v) the main proceeding shall commence on April 18, 2023; and (vi) the District Court's award shall be provided by the end of June 2023. *Id.* ¶ 43.

## ARGUMENT

### I.    This Section 1782 application meets the statutory requirements.

Section 1782 authorizes this Court to order "a person [who] resides or is found" in this district to "produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." 28 U.S.C. § 1782(a). Accordingly, to obtain discovery under Section 1782, an applicant must satisfy three statutory requirements: (1) the discovery must be directed at someone who resides or is found within the district of the district court where the application is made; (2) the discovery must be for use in a foreign proceeding; and (3) the applicant must be an "interested person." *In re Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 8-9 (D.D.C. 2017); *In re Application of Leret*, 51 F. Supp. 3d 66, 70 (D.D.C. 2014); *In re Application of Thai-Lao Lignite (Thailand) Co.*, 821 F. Supp. 2d 289, 292 (D.D.C. 2011). Petitioners' application satisfies these statutory requirements.

### A.    Respondent is found in this district.

The first requirement is satisfied because Respondent resides in the District of Columbia. Respondent maintains a residence in this District and is registered to vote in this District as of December of last year. Kolb Decl. Ex. 7. These facts present a prima facie case that Respondent "resides or is found" in the District of Columbia for Section 1782 purposes. *See In re de Leon*, 2020 WL 1047742, at *2 (D.D.C. Mar. 4, 2020) (adopting the Second Circuit's reasoning that "section 1782's 'resides or is found' language 'extends to the limits of personal jurisdiction consistent with due process'") (*quoting In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019)).

---

[4] FourWorld is in the process of evaluating whether it should seek to identify new witnesses from the Company that could be subpoenaed to testify at the Helsinki District Court.

**B.      The discovery sought is intended for use in a foreign proceeding.**

The discovery Petitioner seeks is "for use" in the A-M Redemption Proceedings. A Section 1782 applicant establishes the "for use" requirement if the requested discovery "relates to claims and defenses that the applicant intends to assert in good faith in a foreign proceeding." *In re Application of Masters for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 315 F. Supp. 3d 269, 273 (D.D.C 2018) (citation omitted). This burden is "de minimis." *Id.* (citation omitted); *see also In re Chodiev*, 2021 WL 6805646, at *8 (D.D.C. May 14, 2021) ("The statute requires only a '*de minimis*' showing of relevance, 'broadly construed,' and, when in doubt, courts should err on the side of overinclusion.") (quoting *In re Veiga*, 746 F. Supp. 2d 8, 17–19 (D.D.C. 2010)). The materials sought need not be discoverable or even admissible as evidence in the foreign jurisdiction. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 253 (2004) ("We now hold that § 1782(a) does not impose [a foreign discoverability] requirement."); *In re Veiga*, 746 F. Supp. 2d 8, 17-18 (D.D.C. 2010) ("[D]istrict courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding."). The question is simply "whether an applicant may make 'use' of the discovery sought, not whether the foreign tribunal will ultimately find it 'useful.'" *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010).

The discovery sought here, including Respondent's communications regarding the Company's financial condition and the Transaction's consummation, relates to the central issue in the A-M Redemption Proceedings – namely, the determination of a fair redemption price for minority shareholders' shares in the Company.

Accordingly, the second statutory requirement is satisfied.

12

**C.**    **Petitioner is an interested person in the foreign proceeding.**

Petitioner is an "interested person" under Section 1782 because it is a party to the A-M

Redemption Proceedings. Ojantakanen Decl. ¶ 24; *see Intel*, 542 U.S. at 256 ("No doubt litigants

are included among . . . the interested persons who may invoke § 1782."); *In re Schlich*, 893 F.3d

40, 52 (1st Cir. 2018) (finding the petitioner to be a party to the underlying foreign proceeding and

"therefore" an interested person for § 1782 purposes); *In re Application of Republic of Ecuador v.

Douglas*, 153 F. Supp. 3d 484, 487 (D. Mass. 2015) ("[T]he Republic is an 'interested person'

because it is the respondent in the Arbitration."); *Haraeus Kulzer GmbH v. Esschem, Inc.*, 390 F.

App'x 88, 91 (3d Cir. 2010) ("An interested person includes a party to the foreign litigation,

whether directly or indirectly.") (citation omitted). Further, this Court has noted that "an interested

person must show that it has a reasonable interest in obtaining judicial assistance in the foreign

proceedings and . . . an established right to provide evidence and have it considered in the foreign

proceeding or a recognized relationship between the section 1782 applicant and a participant in

those proceedings might be sufficient to satisfy that requirement." *In re in re Lucille Holdings

PTE. Ltd. under 28 U.S.C. § 1782*, 2022 WL 1421816, at *12 n.13 (D.D.C. May 5, 2022) (citing

*Certain Funds, Accounts &/Or Inv. Vehicles Managed By Affiliates Of Fortress Inv. Grp. L.L.C.

v. KPMG, L.L.P.*, 798 F.3d 113, 119-20 (2d Cir. 2015)) (internal quotation marks and ellipses

omitted). Here, as a party to the Helsinki District Court proceeding, Petitioner has the right to

provide evidence and have it considered in the foreign proceeding. *See* Ojantajanen Decl, ¶¶ 39-

40. Accordingly, Petitioner satisfies the "interested person" requirement of Section 1782.

**II.**    **The discretionary *Intel* factors favor granting Petitioner's Application.**

Once the three statutory requirements of Section 1782 are satisfied, the Court must

determine, in its discretion, whether to order the requested discovery. *In re Application of Thai-

Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 296-97 (D.D.C. 2011); *see Intel*, 542 U.S.

13

at 264. In *Intel*, the Supreme Court identified four factors to consider: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding" so that the "foreign tribunal has jurisdiction over [it];" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court juridical assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the requests are "unduly intrusive or burdensome" and, if so, whether those requests can be "trimmed." *Intel*, 542 U.S. at 264-65; *In re Barnwell*, 265 F. Supp. 3d at 9. No factor is given more weight than the others, and no one factor is dispositive. *See In re an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2017 WL 3708028, at *3 (D.D.C. Aug. 18, 2017) (noting that the *Intel* Court "declined to assign [the factors] weight or articulate a formula for their consideration"); *In re Application of Leret*, 51 F. Supp. 3d at 71 (explaining that *Intel* "[does] not command that each factor be weighed equally, nor [does it] dictate whether any particular factor should take precedent").

In addition to these suggested factors, the Court should also consider the overarching principles of Section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. Indeed, "a party to litigation in a foreign country can seek discovery relating to that litigation in a federal district court, and, in the discretion of that court, can obtain as *much discovery as it could* if the lawsuit had been brought in that court rather than abroad." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 594 (7th Cir. 2011) (emphasis added) (internal citations omitted). As set forth below, Petitioner satisfies the discretionary *Intel* factors.

### A.    The discovery is sought from a non-party to the A-M Redemption District Court Proceeding.

The first *Intel* factor looks at whether Respondent is a participant in the A-M Redemption Proceedings. In this regard, "the need for § 1782 assistance is stronger when the party from whom discovery is sought is a nonparticipant in the foreign proceedings." *In re Chodiev*, 2021 WL 6805646, at *9 (D.D.C. May 14, 2021) (citing *Intel*, 542 U.S. at 264); *see also In re Application of Thai-Lao Lignite (Thailand) Co., Ltd.*, 821 F. Supp. 2d 289, 297 (D.D.C. 2011) (explaining that a respondent's non-participant status ordinarily favors the granting of a Section 1782 petition); *cf. In re Application of Leret*, 51 F. Supp. 3d at 70-71 (overruling objections to denial of Section 1782 discovery where the respondent was a party to two of the three subject foreign proceedings). Indeed, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264.

Respondent is not a party to the A-M Redemption Proceedings, and Petitioner is otherwise unable to obtain the discovery sought in the application. Ojantakanen Decl. ¶¶ 27, 54. This factor weighs in favor of granting the application. *See In re Chodiev*, 2021 WL 6805646, at *9 (D.D.C. May 14, 2021); *In re DiGiulian*, 2020 WL 5253849, at *4 (D.D.C. Sept. 2, 2020); *In re Barnwell*, 265 F. Supp. at 10.

### B.    Respondent has no reason to believe that Finnish courts are unreceptive to Section 1782 discovery.

The second *Intel* factor considers whether the foreign tribunal is receptive to Section 1782 assistance. Given that the overriding purpose of Section 1782 is the provision of "fair and efficient assistance to participants in litigation abroad," this factor should not be construed to invite "a 'legal tug-of-war' over whether the foreign tribunal would be receptive to [a district court's] assistance." *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010). Rather, for the second *Intel* factor to weigh

15

against discovery, "[t]he party resisting discovery must point to 'authoritative proof' that the foreign tribunal would reject the evidence sought." *Id.* at 23-24. Absent such "clear and unequivocal" evidence, the Court's role should be a "limited one." *Id.* at 8, 24 (observing that the foreign tribunals in question "may simply choose to exclude or disregard the information obtained should they find that this Court has overstepped in ordering discovery"). Applying these standards in *In re Barnwell Enterprises Ltd.*, the district court was unpersuaded by evidence that the requested discovery would run afoul of the foreign tribunal's discovery rules. *In re Barnwell*, 265 F. Supp. 3d at 10-12. In contrast to cases where "a representative of the foreign sovereign or the foreign tribunal itself has made clear its opposition to the petitioner's request," such "proof resting on equivocal interpretations of foreign . . . law generally provides an insufficient basis to deny discovery." *Id.* at 11 (citation omitted); *see also In re DiGiulian,* 2020 WL 5253849, at *4 (D.D.C. Sept. 2, 2020) (requiring "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782" and declining to get bogged down in an "extensive examination of foreign law regarding the existence and extent of discovery in the forum country") (*quoting In re Caratube Int'l Oil Co. LLP*, 730 F. Supp. 2d 101, 105–06 (D.D.C. 2010)); *Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, 2019 WL 1559433, at *7 (D.D.C. Apr. 10, 2019) (finding inadequate, under the "authoritative proof" standard, the respondent's assertion that § 1782 should not apply to proceedings for which, "[i]n principle, no new evidence shall be admitted"); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 228 (D.D.C. 2015) (finding that the second *Intel* factor favored discovery where the foreign counsel said only that "Italian law does not limit the methods by which parties may obtain discovery, as long as the discovery has been obtained legally" and that "[t]here is no evidence that the Italian Court would reject evidence obtained pursuant to § 1782") (citation omitted), *vacated on other grounds*, 2015 WL 13759884 (D.D.C.

16

Nov. 13, 2015); *In re Veiga*, 746 F. Supp. 2d 8, 23-24 (D.D.C. 2010) (holding that "objective proof casting *some* doubt on [a foreign tribunal's] willingness to receive evidence" provides insufficient grounds for denial under the second *Intel* factor).

As set forth in the Ojantakanen Declaration, the determination of a fair redemption price under the Companies Act requires consideration of all relevant factors in a redemption proceeding. Ojantakanen Decl. ¶ 50. Accordingly, Petitioner has a good faith basis to believe that the documentary evidence sought to be obtained under Section 1782 is relevant and that it will be able to use the evidence in the A-M Redemption District Court Proceeding. *See In re Veiga*, 746 F. Supp. 2d 8, 20 (D.D.C. 2010) (finding the "for use" test satisfied after inferring that the petitioners "seek this information in good faith and intend to introduce the discovery sought . . ."). Furthermore, as set forth in the Ojantakanen Declaration, there is no reason to believe that Finnish courts will not be receptive to the use of Section 1782 applications to obtain discovery. *See* Ojantakanen Decl. ¶¶ 55-56.

Accordingly, this factor weighs in favor of granting the application.

### C.    Petitioner is not circumventing foreign restrictions.

The third *Intel* factor considers whether the application is meant to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65. This factor should not be construed as imposing a foreign-discoverability requirement, for *Intel* itself expressly held that "that § 1782(a) does not impose such a requirement." *Id.* at 253; *see also HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 225-27 (D.D.C. 2015) (describing foreign discoverability as "irrelevant" to the circumvention question and thus discarding "[t]he parties' conflicting evidence as to whether the discovery sought is permissible in the [foreign tribunal] . . ."), *vacated on other grounds*, 2015 WL 13759884 (D.D.C. Nov. 13, 2015).

17

As with the second *Intel* factor, the Court should demand "clear and authoritative proof from a source other than [Respondent's] lawyers that the foreign tribunal[] at issue here would refuse the evidence Petitioner[] seek[s]. . ." *In re Barnwell*, 265 F. Supp. 3d at 12 (declining to find that the petitioners had filed their Section 1782 application in bad faith on the basis of the respondents' contention that the foreign tribunals' "discovery rules and decisions" prohibited the discovery the petitioners sought). Moreover, the mere existence of applicable "proof-gathering restrictions" in the foreign tribunal is not conclusive proof of circumvention, for the circumvention inquiry narrowly addresses whether the law of the foreign tribunal "affirmatively prohibits the applicant *from obtaining relief under Section 1782*." *Attorney Gen. of Virgin Is. v. Hyman*, 2020 WL 2615519, at *8 (D.D.C. May 23, 2020) (emphasis added), *order vacated in part*, 2021 WL 706504 (D.D.C. Feb. 23, 2021). That is, "[a] foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 261 (2004).

Additionally, as set forth in the Ojantakanen Declaration, the discovery Petitioner seeks is unavailable in the A-M Redemption Proceedings not because Finnish courts wish to exclude such evidence, but because they lack jurisdiction to require Respondent to produce it. *See* Ojantakanen Decl. ¶¶ 52-54.

Granting the Section 1782 application would not conflict with or circumvent any proof-gathering restrictions in Finland or the A-M Redemption Proceedings. Therefore, this factor also weighs in favor of granting the application.

### D.    The subpoena is narrowly tailored.

Finally, the subpoena's document requests are narrowly tailored, and a deposition is not unduly burdensome. The fourth *Intel* factor ensures that Section 1782 discovery is neither overly

broad nor unduly burdensome. *See In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010). To that end, courts prefer requests that are "reasonably tailored to speak to the claims and defenses raised in the proceedings at issue . . . or [ ]." *Id.* at 25; *see also In re DiGiulian,* 2020 WL 5253849, at *5 (D.D.C. Sept. 2, 2020) (construing the fourth *Intel* factor to include "the relevance of the requested discovery to the foreign proceeding") (*quoting In re an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in a Foreign Proceeding*, 2017 WL 3708028, at *4 (D.D.C. Aug. 18, 2017); *In re de Leon*, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (finding a Section 1782 application "not . . . unduly intrusive" where the requests "appear[ed] relevant to the [foreign] proceedings"); *HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211, 228 (D.D.C. 2015) (finding that a request for all documents regarding "Competing Software" was not overly broad because it was relevant to the underlying claim), *vacated on other grounds*, 2015 WL 13759884 (D.D.C. Nov. 13, 2015). Requests that include "temporal and subject-matter restrictions" are likewise favored. *In re Barnwell*, 265 F. Supp. 3d at 14 (explaining that, "so long as Petitioners' discovery requests are generally limited in time . . . , and so long as Petitioners' discovery requests are limited in scope . . . , the Court is satisfied that those requests are not unduly intrusive or burdensome"). By contrast, "generalized appeals to the burden of discovery do not demonstrate that discovery is *unduly* burdensome." *In re Chodiev*, 2021 WL 6805646, at *10 (D.D.C. May 14, 2021). Indeed, the mere fact that compliance may be "costly and complex" does not militate against an order of Section 1782 discovery where the subpoena is sufficiently tailored for relevance. *In re de Leon*, 2020 WL 1047742, at *3 (D.D.C. Mar. 4, 2020) (finding that a request for "many documents and two depositions" was "not . . . unduly intrusive").

Here, the requests are not unduly intrusive or burdensome under the Federal Rules of Civil Procedure. *See, e.g.*, Fed. R. CIV. P. 26(b)(1) (authorizing "discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."); *see also In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010) (noting that the discovery standards set forth in the Federal Rules of Civil Procedure govern discovery requests under Section 1782).

The subpoena's requests are each narrowly tailored in time and scope to seek information relevant to the A-M Redemption Proceedings. The requests seek documents and communications in Respondent's possession that would illuminate the Board's contemporaneous understanding of the Company's value and of the Transaction's likely effects, as well as the Board's role in facilitating the Transaction's execution. The requests also focus on a narrow time period beginning with the onset of the Company's negotiations with the Consortium and ending with Respondent's departure from the Board. *Cf. Menashe v. Covington & Burling LLP*, 552 F.Supp.3d 35, 44 (D.D.C. 2021) (faulting a Section 1782 discovery request for failing to "specify[] precisely what information is sought or the benefit of that information"); *Attorney Gen. of Virgin Is. v. Hyman*, 2020 WL 706504, at *4 (D.D.C. Feb. 23, 2021) (declining a request for "any emails from several individuals . . . and domains sent to [a particular entity] regardless of their content," where the petitioner "provide[d] no reason to think they would be relevant"); *Islamic Republic of Pakistan v. Arnold & Porter Kaye Scholer LLP*, 2019 WL 1559433, at *8 (D.D.C. Apr. 10, 2019) (finding that the fourth *Intel* factor weighed against discovery of documents that the respondent averred were not in its possession, custody, or control, as a respondent "cannot produce what it does not have"); *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 12 (D.D.C. 2017) (declining to reconsider rejection of Section 1782 discovery requests that "target[ed] a decade-long attorney-client relationship" and thus "pose[d] an extraordinary burden on the respondents and the Court").

Moreover, if the Court believes any of the requests is overly broad, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995); *see also Sauren Fonds-Select SICAV v. For Discovery Pursuant to 28 U.S.C. § 1782*, 2016 WL 6304438, at *6 (D.N.J. October 26, 2016) ("Respondents' arguments regarding undue burden and expense are better addressed in this fashion [through meet and confers, with the court retaining jurisdiction to resolve any disputes as to the appropriate scope of discovery] than by vacating [the Court's order] granting the § 1782 petition"); *Attorney Gen. of Virgin Is. v. Hyman*, 2020 WL 2615519, at *9 (D.D.C. May 23, 2020) (finding the applicant's requests overly broad "but allow[ing] the applicant to refile a more narrowly tailored request . . . ask[ing] only for information that is relevant to its contemplated lawsuit"), *order vacated in part*, 2021 WL 706504 (D.D.C. Feb. 23, 2021).

If Respondent contends that it is burdened by its documents being "located" abroad, that argument fails. Many of the documents Petitioner seeks are emails and thus can be accessed with equal effort from any location. *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020), at *10 ("Respondents' concerns about producing documents located outside the United States is largely anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location."); *see also In re Barnwell*, 265 F. Supp. 3d at 13-14 (observing that the respondent's ability to search its employees' electronic communications "from its office in this district" mitigated concerns about the scope of the petitioners' request); *In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2019) ("[T]he location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital

21

age—does not establish a *per se* bar to discovery under § 1782.") (citation omitted); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (same). Moreover, recent case law—including by two Circuit courts—has coalesced around the view that Section 1782 can be used to obtain the same scope of discovery as any discovery under Rule 45 of the Federal Rules of Civil Procedure, which extends abroad. *In re del Valle Ruiz*, 939 F.3d at 527; *Sergeeva*, 834 F.3d at 1200; *Matter of De Leon*, 2020 WL 1180729, at *9–10 (S.D. Ohio Mar. 12, 2020), *appeal dismissed sub nom. In re De Leon*, 2020 WL 3969865 (6th Cir. May 26, 2020) (adopting the reasoning of *del Valle Ruiz* and *Sergeeva*); *Illumina*, 2020 WL 820327, at *10. *See also In re Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016) ("Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45. Thus, assessment of the fourth factor is virtually identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules."); *In re Mota*, 2020 WL 95493, at *2 (D. Del. Jan. 8, 2020) (same). Thus, in *In re Barnwell Enterprises Ltd.*, the district court found "no reason to reject Petitioners' application out of hand . . . simply because it might require the production of documents currently located [abroad]." 265 F. Supp. 3d at 15.

Accordingly, this last factor weighs in favor of granting the application, and Petitioner is entitled to the discovery sought from Respondent.

## III.    *Ex parte* relief is appropriate.

This Court may grant Petitioner's application on an *ex parte* basis. *See, e.g.*, *Masters*, 315 F. Supp. 3d at 272 ("[T]he Court finds it appropriate to consider the Application *ex parte*.") (citing *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*."); *In re Appl. of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1267 (11th Cir. 2014) ("[T]he district court granted the *ex parte* application."); *In re*

*Hornbeam Corp.*, 2018 WL 416486, at *2 (2d Cir. Jan. 16, 2018) (noting the widespread recognition that § 1782 applications are properly handled *ex parte*); *In re Eurasian Nat'l Resources Corp.*, 2018 WL 1557167, at *2 (N.D. Cal. Mar. 30, 2018) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to Section 1782."). As noted, serving a subpoena authorized under Section 1782 does not deprive Respondent of her ability to object to the subpoena under Rule 45 or otherwise. Such relief is particularly appropriate here, as this application does not "present complex issues that require the participation of [Respondent] to resolve." *Masters*, 315 F. Supp. 3d at 273.

## CONCLUSION

Accordingly, for the foregoing reasons, Petitioner respectfully requests that this Court grant the application for judicial assistance under Section 1782.

23

Dated: August 29, 2022
     Washington, D.C.

                **FISHER BROYLES, LLP**

                *By: /s/ DRAFT*_____

                   Gene M. Burd (D.C. Bar No. 1004330)
                   1200 G Street NW, Suite 800
                   Washington, D.C. 20005
                   Tel: 202.750.0529
                   Email: gene.burd@fisherbroyles.com

                   Tiffany N. Compres (Fl Bar. No. 78118)
                   (*pro hac vice* forthcoming)
                   1221 Brickell Avenue, Suite 900
                   Miami, Florida 33131
                   Tel: (305) 342.2957
                   Email: tiffany.compres@fisherbroyles.com

                **HERRICK, FEINSTEIN LLP**
                Kyle J. Kolb (NY Bar No. 5014121)
                (*pro hac vice* forthcoming)
                Two Park Avenue
                New York, New York
                Tel: (212) 592-1400
                Fax: (212) 592-1500
                Email: kkolb@herrick.com

                *Attorneys for Petitioner FourWorld Event Opportunities, L.P.*